1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SANDRA J. SWENSRUD,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 11-cv-6053-JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 8). This matter has been fully briefed (*see* ECF Nos. 17, 19, 20).

After reviewing the record, the Court concludes that the ALJ committed harmful legal error when he found that plaintiff could perform her past relevant work and when he

found, in the alternative, that she could perform other work existing in the national economy. Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

## BACKGROUND

Plaintiff, SANDRA J. SWENSRUD, was forty-eight years old on her alleged date of disability onset of December 15, 2007 (*see* Tr. 120). She has past relevant work as a title clerk, as well as work experience in customer service (*see* Tr. 28, 140-47). Plaintiff worked for over ten years as a secretary, doing customer service for a single company, Polybag (*see* Tr. 47, 140). However, she reported that her symptoms due to her mental impairments increased to the point that she was fired for excessive absenteeism in 2002 (*see* Tr. 47-48, 555).

Plaintiff subsequently lost four jobs due to absenteeism, allegedly caused by her mental impairments (*see* Tr. 51-52, 555-56). Plaintiff also testified that she attempted suicide in December, 2007 (*see* Tr. 47). She has been receiving mental health treatment since then.

At her first evaluation following this suicide incident, on January 4, 2008, Dr. David N. Griggs, M.D. ("Dr. Griggs") indicated plaintiff's subjective report that "she feels 'even keel' for about three or four weeks and then suddenly feels like jumping off a cliff" (*see* Tr. 219). Dr. Griggs indicated his assessment that "[b]y history and experience with medications, I suspect bipolar disorder" (*id.*). Dr. Griggs assessed that plaintiff's other "active medical problems are insomnia, fibromyalgia, diabetes, obesity, migraines, dyslipidemia, hypertension," and irritable bowel syndrome (*id.*).

The ALJ gave great weight to the opinions of non-examining doctor, Dr. William Lysak, Ph.D. ("Dr. Lysak"), who evaluated plaintiff's record as it existed on July 31, 2008 (*see* Tr. 253-56). However, in September, 2009, treatment records indicate the following:

> [Plaintiff] is a 50-year-old who presents to the emergency room with her family and concern for overuse of her medications. She comes in with family for concern for altered mental status, and they think it is due to the fact that she has been taking too many of her medications. She has multiple bottles, in fact an entire bag of medications . . . . From the bottles, it looks like the patient has probably taken too much of the cyclobenzaprine and alprazolam; it looks like probably over a length of time. She is awake and talking to me. She just seems a little bit sleepy when she gets here and that clears over the course of her ER stay.
> . . . .
> [Plaintiff's] urine screen is only positive for benzodiazepines, which she is prescribed, but it is certainly conceivable that she took a few too many, but again her mental status has cleared.

(Tr. 455-56). The Emergency Medicine doctor diagnosed plaintiff with "nonlethal overuse of prescription medications" (*see* Tr. 456).

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability benefits as well as for supplemental security income on May 20, 2008 (Tr. 120-28). She alleged disability on the basis of fibromyalgia, post traumatic stress disorder, bipolar disorder and diabetes, type II. Her applications were denied initially and following reconsideration (*see* Tr. 64-70). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on July 27, 2010 (Tr. 39-59). On August 19, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 9-33).

On November 21, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review (*see* ECF Nos. 1, 4). Defendant filed the sealed administrative record ("Tr.") regarding this matter on March 26, 2012 (*see* ECF Nos. 11, 12). In her Opening Brief, plaintiff contends that the ALJ erred in his step four finding that plaintiff was able to perform her past relevant work, and contends that he erred in his alternative step five finding that plaintiff was capable of performing other work existing in the national economy (*see* ECF No. 17, pp. 1-2). Plaintiff also questions the ALJ's review of her testimony and the lay opinion evidence, and also contends that the ALJ erred in not finding that plaintiff's alleged bipolar disorder was a severe impairment (*id.*).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot,

considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

1. **The ALJ erred in his step four determination that plaintiff's impairments did not prevent plaintiff from doing her past relevant work**.

The Commissioner has established a five-step sequential evaluation process to determine whether or not an individual is disabled as defined under the Social Security Act. 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the

validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987), and it remains the proper approach for analyzing whether or not a claimant is disabled.

First, the Commissioner considers whether or not the claimant is currently engaged in substantial gainful activity. *See* 42 U.S.C. § 423(d) (1) (A); *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995). Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner next considers whether or not the claimant has a "severe impairment" that significantly limits physical or mental ability to do basic work activities. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). If the claimant has such an impairment, and it is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, at step-three of the administrative process, the claimant will be considered disabled without considering age, education and work experience. *See* 20 C.F.R. § 404.1520(d).

Relevant here, at step-four in the evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevents the claimant from doing her past relevant work. *See* 20 C.F.R. § 404.1520(f). If the ALJ finds that the claimant has not shown an incapability of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends. *See id.* Plaintiff bears the burden to establish the inability to perform past work. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)). As reviewed by the Ninth Circuit:

At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62; *see* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted] This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform:

1. The actual functional demands and job duties of a particular past relevant job; or
2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

*Id.*

The ALJ here found that plaintiff was "capable of performing past relevant work as a title clerk, automobile (clerical)," and that this work did "not require the performance of work-related activities precluded by the claimant's residual functional capacity ['RFC']" (Tr. 28). The ALJ previously in the written decision had indicated his findings regarding plaintiff's RFC, including the "nonexertional impairment(s), [that] she is limited to simple repetitive tasks" (*see* Tr. 18). However, the job of automobile title clerk, DOT [Dictionary of Occupational Titles] 203.582-066, requires the ability to perform at a reasoning level of three. *See* DOT, Appendix A, 203.582-066 (available at: http://www.occupationalinfo.org/20/203582066.html ("R3").

The ALJ failed to explain how plaintiff could have performed work requiring a reasoning ability at a level of three (*see* Tr. 28-29) when the ALJ had found that she was "limited to simple repetitive tasks" (*see* Tr. 18). Instead, the ALJ simply makes the conclusory finding that "the claimant possesses the [RFC] detailed above, and the undersigned finds the claimant is capable of performing past relevant work" (*see* Tr. 29). The Court concludes that this finding is not based on substantial evidence in the record as a whole, *see Magallanes*, *supra*, 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26), as explained further below.

Plaintiff argues that a requirement of a reasoning level of three is not consistent with a limitation specifically to simple and repetitive tasks, and defendant has not countered this specific argument. Plaintiff contends that a person limited to simple repetitive tasks, such as the ALJ found plaintiff to be here, does not possess the ability to reason above the DOT reasoning level two (*see* Opening Brief, ECF No. 17, pp. 11-14). The wording of the Social Security Regulations and the standards of DOT are not aligned on this subject, and therefore, do not provide the Court with a definitive answer to this question. *See, e.g., Meissl v. Barnhart*, 403 F.Supp.2d 981, 984 (C.D. Cal. 2005).

As noted by the district court in *Meissl*, "the Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: 'short and simple instructions' and 'detailed' or 'complex' instructions," while the "DOT, on the other hand, employs a much more graduated, measured and finely tuned scale." *Id.* (*citing* 20 C.F.R. 426.969a(c)(1)(iii)) (other citation omitted). The *Meissl* court concluded that to "equate the Social Security regulations' use of the term

'simple' with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the work 'detail.'"

*Id.*

The ALJ here implicitly found that a person restricted to simple repetitive tasks nevertheless can perform work requiring level three reasoning (*see* Tr. 28). Despite the lack of definitive guidance from the Social Security regulations and the DOT on this issue, the issue of whether or not such a finding is consistent with the standards contained in the DOT has been presented to district courts in this Circuit before. *See, e.g., Torrez v. Astrue*, 2010 WL 2555847, *8-*9 (E.D. Cal. 2010) (unpublished opinion) (collecting cases). The situation in *Torrez* was similar to the one presented here, and the reasoning of the court in *Torrez* is persuasive. *See id.*

The *Torrez* court reviewed a number of cases, and indicated that in "light of the weight of authority in this circuit, the Court concludes that the DOT precludes a person restricted to simple, repetitive tasks, from performing work, such as that of mail clerk, that required level three reasoning." *Id.* In making this conclusion, the *Torrez* court included the following discussion of recent cases:

> Several district court cases in this circuit question whether a claimant limited to simple, repetitive tasks, is capable of performing jobs requiring level three reasoning under the DOT. In *McGensy, v. Astrue*, 2010 WL 1875810 (C.D. Cal. May 11, 2010), the Court noted that while case law has held that 'a limitation to 'simple, repetitive tasks' is consistent with level two reasoning, 'this restriction is 'inconsistent' with the requirements for level three reasoning, in particular the job of *mail clerk. Id.* at *3 (*citing Pak v. Astrue*, 2009 WL 2151361 at *7 (C.D. Cal. July 14, 2009) ("The Court finds that the DOT's Reasoning Level three requirement conflicts with the ALJ's prescribed limitation that Plaintiff could perform only simple, repetitive work."); *Tudino v. Barnhart*, 2008

> WL 4161443 at *11 (S.D. Cal. Sept. 5, 2008) ("'[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks'; remand for ALJ to 'address the conflict between Plaintiff's limitation to 'simple repetitive tasks' and the level-three reasoning'"); *Squire v. Astrue*, 2008 WL 2537129 at *5 (C.D. Cal. June 24, 2008) (reasoning level three is 'inconsistent with a limitation to simple repetitive work')). In addition, in *Bagshaw v. Astrue*, 2010 WL 256544 at *5 (C.D. Cal. January 20, 2010), the court expressly cited *Hackett* in concluding that a mail clerk job, which requires level three reasoning under the DOT, was 'inconsistent with [the plaintiff's] intellectual functional capacity limitation to simple, routine work.'

*Id.* at *8; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). The Court notes that many of the cases cited in *Torrez* and *McGensy* also review additional district court cases not cited herein supportive of the findings discussed, and that *Meissl*, *supra*, 403 F.Supp.2d at 982-85, includes a discussion of the DOT levels one through three, of the six levels of reasoning (specifically, reasoning level one, as opposed to reasoning level two). *See also Pak, supra*, 2009 WL 2151361 at *7 (discussing DOT reasoning level three, as opposed to level two).

Based on the reasons stated, and the relevant record, the Court concludes that the ALJ's conclusory finding that plaintiff could perform her past relevant work at step four, without further justification or explanation as to how plaintiff's RFC limitation to simple repetitive tasks was consistent with the required ability for level-three reasoning at her past relevant work, is not a finding based on substantial evidence in the record as a whole. *See Magallanes, supra*, 881 F.2d at 750. Because this finding led directly to the ALJ's ultimate conclusion that plaintiff was not disabled, this error was not harmless. Therefore, this matter shall be reversed and remanded to the Commissioner for further administrative proceedings.

2. **The ALJ erred during step five of the sequential disability evaluation process.**

At step five in the sequential disability evaluation process, the ALJ here made an alternative finding that plaintiff was capable of performing other work existing in the national economy (*see* Tr. 29-31). The ALJ made this finding without the assistance of a vocational expert.

A vocational expert's testimony is required at step five "when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case." *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). However, the single fact that a claimant has severe non-exertional limitations alone "does not require that the ALJ seek the assistance of a vocational expert at step five." *See id.* at 1075-76. These findings at steps two and five "require different levels of severity of limitations." *Id.* at 1076. The non-exertional limitations must be sufficiently severe such that a claimant's range of work permitted by the claimant's exertional limitations is not significantly limited. *See id.* Otherwise, a vocational expert's testimony is required at step five. *See id.*

In the case here, the ALJ found that plaintiff had more than one non-exertional limitation, including the limitation to simple repetitive tasks just discussed, *see supra*, section 1; and including the limitation to "no more than superficial public contact" (Tr. 18). However, the ALJ found that plaintiff's mental limitations did not "unduly reduce the capacity to perform substantial gainful activity" (*see* Tr. 29). The ALJ did not explain adequately how plaintiff's limitation to simple, repetitive tasks, and her limitations on

contact with the public, would not interfere significantly with her ability to perform work activity in a normal full-time work environment.

In addition, when making this finding, the ALJ did not discuss plaintiff's alleged suicide attempts, nor did he discuss the fact that she testified, and the lay opinion evidence supported this testimony, that she had great difficulty leaving her house. In his written decision, the ALJ repeatedly cited the fact that after plaintiff's family members drove plaintiff to her therapy appointments, she occasionally was able to make it home on her own (*see* Tr. 16-17, 22-23). The ALJ does not explain how plaintiff's testimony that she has anxiety about leaving her house alone, and the fact that once out of her house she is able to get back to her place of safety on her own, are inconsistent facts. It is not a logical inference that one who is afraid to leave the house alone, should not be able to make it home on her own after leaving the house with a family member. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citations omitted). Similarly, the ALJ makes much of two notations in the record reflecting that plaintiff left the house alone twice over the course of several years: on one occasion, she went to the nail salon by herself, after being urged to do so by her therapist; and on another occasion she allegedly went to a bar during an manic episode and ended up in the hospital.

Because the ALJ did not explain how these and other relevant factors are consistent with his finding that plaintiff's nonexertional impairments did not "unduly reduce the capacity to perform substantial gainful activity," the Court concludes that the ALJ's finding that plaintiff's non-exertional limitations were not sufficiently severe as to make the grids inapplicable was not based on substantial evidence in the record (*see* Tr.

29). *See Hoopai*, *supra*, 499 F.3d at 1076. Therefore, the ALJ's step five finding that plaintiff could perform other work, without the use of a vocational expert, was harmful error.

3. **The entire five step disability evaluation process should be completed anew following remand of this matter**.

The Court already has concluded that this matter should be reversed and remanded for further consideration, *see supra*, sections 1 and 2. For this reason, the other issues raised by plaintiff will not be evaluated fully herein (*see* Opening Brief, ECF No. 17, pp. 1-2, 2-11, 17-22). However, the Court notes that plaintiff's activities of daily living, and the extent to which, if any, they are relied on in order to support any inference regarding the functional limitations resulting from plaintiff's impairments, should be discussed explicitly by the ALJ. In addition, if the ALJ assigned to this matter following remand relies on plaintiff's daily activities in order to make an adverse credibility determination or to support inferences regarding functional ability; and the ALJ does not make explicit determinations regarding the transferability of these activities to a work setting, the ALJ should make explicit determinations regarding how plaintiff's activities demonstrate a conflict with her other testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *See Orn*, *supra*, 495 F.3d at 639 (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse

credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603).

The Court also notes that the ALJ appears to have credited more fully the opinion of the non-examining, medical consultant, who reviewed only plaintiff's file as it existed on July 31, 2008 (*see* Tr. 253-56; *see also* Tr. 27-28), than he credited the opinions of the rest of plaintiff's examining doctors and treating lay source. However, generally, an examining doctor's opinion is entitled to greater weight than that of a non-examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted); *see also* 20 C.F.R. § 404.1527(d). In addition, it appears that all of the doctors who examined plaintiff assessed her as more limited than did the non-examining consultant (*see* Tr. 301 (examining doctor, Dr. Janis L. Lewis, Ph.D. opined that plaintiff suffered from severe limitations on her functional ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting; and suffered from marked limitations on her functional ability to control physical or motor movements and maintain appropriate behavior), Tr. 293 (similar opinions); Tr. 447 (Dr. Dana Harmon, Ph.D. opined that plaintiff suffered from markedly severe limitations on her ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressures and expectations of a normal work setting; and, to maintain appropriate behavior in a work setting)). The medical evidence should be

evaluated in a manner consistent with the guidelines for examining verses non-examining medical sources.

## CONCLUSION

The ALJ made conclusory findings at steps four and five of the sequential disability evaluation process that were not based on substantial evidence in the record as a whole.

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 21st day of November, 2012.

J. Richard Creatura
United States Magistrate Judge